AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
## for the
### Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
04/28/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___AP___ DEPUTY



FILED
CLERK, U.S. DISTRICT COURT
4/28/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___D.C.___ DEPUTY

United States of America

v.

Johnal Ray and Jamar Henry,

Defendants.

Case No. 5:25-mj-00251

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of March 21, 2025 in the county of San Bernardino in the Central District of California, the defendants violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Interference with Commerce by Robbery |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
_____
Complainant's signature

Amanda Harakas, FBI Special Agent
_____
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 4/28/25

_____
Judge's signature

City and state: Riverside, California

Hon. Shashi H. Kewalramani, U.S. Magistrate Judge
_____
Printed name and title

AUSA: Max A. Shapiro (x7419)

## AFFIDAVIT

I, Amanda Harakas, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrants against Johnal RAY ("RAY") and Jamar Henry ("HENRY") for violations of 18 U.S.C. § 1951(a) (Interference with Commerce by Robbery).

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrants and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

### II. BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since April 2021. I am currently assigned to the FBI, Los Angeles Field Division, Riverside Resident Agency, and I am also a member of the Inland Empire Safe Streets Task Force. This task force consists of experienced investigators from the FBI, Riverside Sheriff's Office ("RSO"), California Department of Corrections, and the San Bernardino County Sheriff's Department ("SBSD").

1

4. I have received 21 weeks (approximately 840 hours) of instruction in the fundamentals of law, ethics, behavioral science, interviewing, report writing, firearms, surveillance, defensive tactics, and case management at the FBI Academy in Quantico, Virginia. Through the course of my employment with the FBI, I have participated in a variety of investigations, including national security, kidnapping, drug trafficking, gang investigations, and violent crimes against children.

5. As an FBI SA, I have used a variety of investigative techniques, including interviewing suspects and witnesses speaking with law enforcement agents and officers, conducting and reviewing electronic surveillance, executing arrest and search warrants, analyzing telephone records, and collecting and reviewing physical evidence. From this experience and my conversations with other law enforcement personnel with substantial experience, I am familiar with the methods used by individuals engaging in robberies.

### III. SUMMARY OF PROBABLE CAUSE

6. On March 21, 2025, RAY, HENRY, and two other individuals robbed Daniel's Jewelers, a jewelry store located in Fontana, California ("Daniel's Jewelers") (the "SUBJECT ROBBERY"). At approximately 5:30 p.m., the robbers exited a red Nissan Rogue bearing California license plate 9CLW709 (the "Nissan"). They wore masks as they entered Daniel's Jewelers and sprayed pepper spray in the air and sprayed one employee in the face directly. They then smashed the glass display cases with hammers and grabbed approximately $323,000 worth of jewelry

before fleeing the scene in the Nissan. Shortly after, the Nissan pulled along a curb and met with a black BMW, bearing California license plate 9HQV361 (the "BMW"), which is registered to RAY. Three of the robbers exited the Nissan and entered the BMW.

7. The Fontana Police Department ("FPD") and the FBI have been investigating the SUBJECT ROBBERY, and have determined there is probable cause to believe that Johnal Ray ("RAY"), and Jamar Henry ("HENRY") were members of the robbery crew, including based on the following evidence:

    a. The BMW used as the getaway vehicle was registered to RAY. On March 27, 2025, investigators conducted surveillance on RAY, and saw him driving the BMW to several jewelry stores in the Los Angeles area.

    b. Investigators identified an Instagram account with the username "JL0tt0" associated with RAY. The day after the SUBJECT ROBBERY, on March 22, 2025, the Instagram account posted a video of an individual law enforcement believes to be RAY driving a BMW and holding a clear bag of what appears to be jewelry in his lap. The Instagram account posted a second video showing the same individual holding a gold ring with six diamonds in the band. An employee from Daniel's Jewelers looked at a photograph of the video and confirmed it was one of the pieces stolen from store during the SUBJECT ROBBERY.

    c. Investigators identified a phone number for RAY, 310-489-3735 ("Target Phone"). FPD authored a state search warrant for call detail records and GPS location of the Target

3

Phone. Based on the foregoing, law enforcement learned the Target Phone was in the area of Daniel's Jewelers around the time of the SUBJECT ROBBERY. Additionally, investigators located the Target Phone near a Home Depot before the SUBJECT ROBBERY, and reviewed surveillance footage from Home Depot from that time. The footage showed RAY and HENRY, with HENRY wearing the same clothing at Home Depot that he was wearing at Daniel's Jewelers during the SUBJECT ROBBERY.

      d.    Investigators identified a phone number for HENRY, 562-617-2455 ("Target Phone 2"). FPD authored a state search warrant for call detail records and GPS location of the Target Phone 2. Based on the foregoing, law enforcement learned the Target Phone 2 was in the area of Daniel's Jewelers around the time of the SUBJECT ROBBERY.

      e.    Law enforcement executed search warrants at the residences of RAY and HENRY, where they recovered stolen jewelry, a hammer, and clothing used during the SUBJECT ROBBERY.

## IV. STATEMENT OF PROBABLE CAUSE

8.    Based on my review of law enforcement reports, surveillance footage, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

    **A.**    **RAY, HENRY and Two Other Suspects Robbed a Jewelry Store with Pepper Spray and Stole Over $300,000 Worth of Jewelry.**

9.    On March 21, 2025, at approximately 5:30 p.m., four men robbed Daniel's Jewelers. Based on my review of the surveillance footage, I know that at approximately that time

four individuals arrived outside Daniel's Jewelers the Nissan. Three suspects exited the vehicle and entered the store wearing masks. They pepper sprayed multiple individuals inside, smashed the display cases, and took the jewelry inside before exiting the store and fleeing the scene in the Nissan.

10. FPD Officers responded to Daniel's Jewelers and interviewed multiple employee witnesses who were at the store during the SUBJECT ROBBERY, including one employee ("V1") who was pepper sprayed directly in the face and ran to a nearby business. According to FPD reports, by the time law enforcement arrived, V1 had severe redness and skin irritation on her face, which is consistent with someone who had been pepper sprayed. Another employee ("V2") told law enforcement she was in the back when she heard screaming and glass shattering. She walked out and observed a male wearing a black jacket, black pants, and a black mask running at her. Before she could get a good look at the suspect, the suspect sprayed pepper spray in the air to blind her. V2 ran to another employee and took them to a back office where they locked the door and called 911.

11. Daniels Jewelers reported to law enforcement that the stolen jewelry was worth approximately $323,000.

B. **Law Enforcement Connected One of the Getaway Vehicles to RAY**

12. Following the SUBJECT ROBBERY, law enforcement received a call from a witness who observed the Nissan about one mile from Daniel's Jewelers. The witness indicated they saw the driver of the Nissan get out of the vehicle and remove a white

piece of paper that was blocking the license plate. The witness advised the circumstances were suspicious and that they wrote the license plate (9CLW709) down after the sheet of paper was removed. The witness then observed the BMW pull behind the Nissan, and saw three individuals exit the Nissan, enter the BMW, and drive away. Law enforcement's review of surveillance footage from a nearby business confirmed the witness's reporting.

13. Based on review of law enforcement databases, law enforcement determined the BMW was registered to RAY.

### C. Social Media Posts Further Indicated RAY Was One of the Robbers.

14. In investigating the SUBJECT ROBBERY, law enforcement identified an Instagram account with the username "JL0tt0" as associated with RAY. Law enforcement then viewed two videos posted publicly onto the account the day after the SUBJECT ROBBERY:

    a. A video which showed a man, who law enforcement believed to be RAY, driving in a BMW, with the camera moving to show the driver's lap where there was a clear bag with jewelry in it.

    b. A second video which showed an individual, who law enforcement believed to be RAY, showing a gold ring with six diamonds on it. Investigators showed a picture of the ring from the video to an employee at Daniel's Jewelers who indicated that the ring was one of items stolen during the SUBJECT ROBBERY.

### D. Phone Location Data and Video Surveillance Further Placed RAY and HENRY at the SUBJECT ROBBERY

15. Based on law enforcement databases and public records, law enforcement identified a phone number associated with RAY: 310-489-3735 ("Target Phone"). Investigators obtained a state warrant for call detail records and location data from the Target Phone.

16. A review of the location data from the Target Phone showed that the Target Phone was in the area of Daniel's Jewelers around the time of the SUBJECT ROBBERY. Additionally, prior to the SUBJECT ROBBERY, the Target Phone was near a Home Depot located at 3363 West Century Blvd, Inglewood, California 90303 (the "Home Depot"). Investigators then obtained video surveillance footage from the Home Depot, which depicted HENRY and RAY inside the Home Depot hours prior to the SUBJECT ROBBERY. The surveillance video also showed HENRY wearing the same clothes one of the robbers wore to the SUBJECT ROBBERY.

### E. Surveillance Confirmed RAY Drove One of the Vehicles Involved in the SUBJECT ROBBERY and where HENRY and RAY Reside.

17. Between March 24, 2025, and April 9, 2025, law enforcement conducted surveillance on RAY and HENRY, which revealed the following:

   a. On March 27, 2025, law enforcement observed RAY driving the same BMW that was used as the getaway vehicle following the SUBJECT ROBBERY. Law enforcement also saw RAY drive the BMW to several jewelry stores in the Los Angeles area.

7

  b. Law enforcement confirmed RAY's residence at an address on W 109th Pl in Los Angeles, CA.

  c. Law enforcement confirmed HENRY's residence at the address W 111TH St in Los Angeles, CA.

### F. Law Enforcement Recover Evidence of the SUBJECT ROBBERY At HENRY And RAY's Residences

18. On April 10, 2025, FPD served a search warrant at HENRY's residence. Based on my review of law enforcement reports regarding the search warrant execution and my conversations with other law enforcement officers, I understand the following:

  a. The tenants at the residence stated HENRY lived in the back house on the property.

  b. During the search of the back house (HENRY'S residence), law enforcement recovered a piece of mail with HENRY's name in a dresser drawer. Investigators also discovered a pair of white Men's Nike Air Max shoes which matched the shoes HENRY wore during the SUBJECT ROBBERY.

  c. In the alleyway east of the residence, which was included in the search warrant, was HENRY's vehicle. In the trunk of the vehicle, law enforcement recovered a loaded silver Taurus PT 24/7 Prods firearm, bearing serial number TBV63182.

19. On April 10, 2025, FPD also served a search warrant at RAY'S residence. Based on my review of law enforcement reports regarding the search warrant execution and my conversations with other law enforcement officers, I understand law enforcement recovered a checkered backpack with jewelry, a California

Driver's license belonging to RAY, a hammer, diamonds in a Ziplock bag, bear mace, and gloves.

### G. Location Data from the Phone Recovered during HENRY's Arrest Further Placed him at the SUBJECT ROBBERY.

20. On April 10, 2025, FPD arrested HENRY. During the arrest, FPD located Target Phone 2 on HENRY's person. Investigators obtained a state warrant for call detail records and location data from Target Phone 2.

21. A review of the location data from Target Phone 2 showed that Target Phone 2 was in the area of Daniel's Jewelers around the time of the SUBJECT ROBBERY. Additionally, prior to the SUBJECT ROBBERY, Target Phone 2 was near the Home Depot. During a Mirandized interview following his arrest, law enforcement showed HENRY a photograph of the surveillance video footage from the Home Depot, and he stated one of the individuals depicted in the video was him.[1]

### H. Daniel Jewelers Operates in and Affects Interstate Commerce

22. On April 24, 2025, at 11:40 A.M., I spoke to a store manager at Daniel's Jewelers, who told me that the store sells jewelry products that are manufactured outside of California. The store also accepts credit card transactions.

---

[1] He also denied being at Daniel's Jewelers.

9

Case 5:25-cr-00161-AH   Document 1   Filed 04/28/25   Page 11 of 11   Page ID #:11

## V. CONCLUSION

23. For all of the reasons described above, there is probable cause to believe that RAY and HENRY committed violations of 18 U.S.C. § 1951(a) (Interference with Commerce by Robbery).

Attested to by the applicant in ~~accordance with the requirements of Fed. R. Crim. P. 4.1~~ by ~~telephone~~ on this 28th day of April, 2025. *in my presence under penalty of perjury*

_____
HON. SHASHI H. KEWALRAMANI
UNITED STATES MAGISTRATE JUDGE